[Sac. No. 1804. In Bank—May 24, 1911.]

MOLLIE CONKLIN, Respondent, v. JOHN A. BENSON
et al., Defendants. THOMAS B. WALKER and C. L.
HOVEY, Appellants.

GRANT INDUCED BY TRICK—FORGERY—IMMATERIAL DIFFERENCE IN IN-
STRUMENTS SIGNED—INTENT TO EXECUTE CONVEYANCE.—Where a
person who has no intention of selling or encumbering his property
is induced by trick or device to sign a paper having such effect,
believing that paper to be a substantially different instrument, the
paper so signed is as much a forgery as it would have been had
the signature been forged. Such doctrine, however, has no applica-
tion to a case where the party signing fully understood and believed
that she was signing papers which, when delivered, would convey
her interest in certain land, and the only difference between the
papers she thought she was signing and the papers actually signed,
was one of detail, and in no degree material to the accomplishment
of her ultimate intention of effecting a conveyance of the land.

ID.—AGENT INTRUSTED WITH PAPERS OF CONVEYANCE—INNOCENT PUR-
CHASER FROM AGENT—FRAUD ON PRINCIPAL.—When an owner of
land voluntarily and consciously signed papers effectually disposing
of her interest therein, and delivered them to her agent for the
purpose of ultimate delivery to the purchasers upon payment of the
purchase price, the equities of innocent purchasers directly dealing
with the agent are protected, even if injury be done to the grantor
through the imposition or fraud of the agent.

CLIX Cal.—50

ID.—AGENT CLOTHED WITH POWER OF DISPOSITION—INNOCENT PUR-
CHASER PROTECTED AS AGAINST PRINCIPAL.—Where the true owner
holds out another, or allows him to appear as the owner of or as
having full power of disposition over the property, and innocent
third parties are thus led into dealing with such apparent owner, they
will be protected. Their rights in such cases do not depend upon
the actual title or authority of the party with whom they deal
directly, but are derived from the act of the real owner, which
precludes him from disputing, as against them, the existence of the
title or power, which through negligence, or mistaken confidence, he
caused or allowed to appear to be vested in the party making the
conveyance.

APPEAL from a judgment of the Superior Court of Modoc
County and from an order refusing a new trial. John E.
Raker, Judge.

The facts are stated in the opinion of the court.

A. E. Bolton, for Appellants.

E. M. Gibson, and N. E. Conklin, for Respondent.

ANGELLOTTI, J.—Plaintiff claiming to be the owner of
an undivided one-half interest in two hundred acres of land
situate in Modoc County, brought this action against defend-
ants to obtain a decree adjudging that they have no interest
therein, and adjudging that a certain deed and certain powers
of attorney under which defendant Walker claims to be the
owner of such land are void. This land has been granted by
United States patent to plaintiff and the legal representatives
of the estate of Patrick Reddy, deceased, in lieu of a portion
of certain land owned by them situated within the limits of
the Sierra Forest Reserve. Walker claims to have acquired
in good faith and for a valuable consideration all of the in-
terest of said patentees in said land by the deed and powers
of attorney sought to be held of no effect, and also their
interest in other parcels aggregating 1760 acres selected in
lieu of other lands owned by them and situate within said
Forest Reserve. Findings and judgment were in favor of
plaintiff upon the issues made by the pleadings, and we have
before us an appeal by Walker and Hovey from the judgment,
and an appeal by Walker from an order denying his motion for
a new trial.

The plaintiff makes many general charges of fraud and conspiracy in the manner of the obtaining of the execution by her of instruments under which Walker claims, and in regard to some of these charges the testimony of plaintiff's witnesses was such that it cannot be held that there was not a substantial conflict in the evidence. But there is no conflict at all in the evidence as to certain facts, which, in our view of the law, establishes the right of Walker to prevail in this action.

In the year 1900 plaintiff was the owner of an undivided one half of about 9600 acres of land in Inyo and Tulare counties, known as the "Monache land," which had originally been acquired by her husband from the United States government. Patrick Reddy was the owner of the other undivided one half which, on his death in the early part of the year 1900, passed, subject to administration, to his widow, Emily M. Reddy, and his brother, Edward A. Reddy. This land was all within the Sierra Forest Reserve, which had been set apart by the president of the United States prior to the year 1900. Under an Act of Congress, the owners of the land so situated were authorized to relinquish the same to the government, and select in lieu thereof land open to settlement situated elsewhere. To accomplish such a substitution it was essential that the owners convey the reserve land, termed in such transactions the forest reserve base or base land, to the United States by a deed recorded in the proper county recorder's office, and file such deed, with an abstract of title showing title in the government, in the local land-office, with an application for other specifically described land in lieu thereof, the land so selected being termed in such transactions lieu land. Under the law, if the land so selected is found to be open to location and the application is approved by the local land-office, the papers are forwarded to the general land-office, and, if there approved, a patent is issued to the original owner by the government for the selected or lieu land. Plaintiff and the Reddys were desirous of selling their Monache land. In July or August, 1900, a meeting was held in the private office of J. C. Campbell of the law firm of Campbell, Metson & Campbell, for the purpose of determining what should be done in the matter of these lands. There were present, among others, Mr. Campbell, Mr. John A. Benson, one of the defendants, plaintiff, and Mrs. Reddy. Mr. Campbell was one of the attorneys for the

Reddys, and, as must be assumed in view of the findings, he was also an attorney for Mrs. Conklin in this matter. She claims, and it is not susceptible of serious doubt, that he had her absolute trust and confidence. It was decided at this meeting that the land should be disposed of by sale. It was claimed by plaintiff and one of her witnesses who was present at the meeting that the parol understanding was that Benson should buy the base land outright for $3.80 per acre, and that deeds therefor were to be executed and placed in escrow, where or with whom or by whom not being expressly specified, but it appears to have been understood by plaintiff that Mr. Campbell was to see to this, and it was alleged in plaintiff's complaint that the agreement was that the deeds should be placed in escrow "under the supervision of plaintiff's said attorney, J. C. Campbell." It was further claimed that the understanding was that said deeds should be taken up from time to time as to various parcels thereof upon payment of the purchase price by Benson, all of the land to be so taken within ninety days. It is not disputed that it was contemplated by all parties that Benson was to obtain the money wherewith to pay for the land from persons to whom he should sell it. Subsequently, papers looking to the disposition of the land were prepared by Benson, and, through Mr. Campbell, submitted to plaintiff and the Reddys for execution. They consisted of deeds to the United States of the Monache lands, powers of attorney, authorizing the attorney in fact to select and apply for lieu lands or applications for such lieu lands, and powers of attorney authorizing the attorney in fact to convey the lieu land for such sum or price as he might deem proper. According to the evidence of plaintiff, these papers were sent from the office of Mr. Campbell to her for signature, and she, relying entirely upon him and believing that they were simply deeds to Benson, signed them and returned them to his office. There was no deposit in escrow of any of these papers, and they were apparently all placed in Benson's possession. The deeds to the United States of the base land were recorded in the proper counties. Benson thereupon proceeded in an endeavor to sell such land as might be selected as lieu land. Defendant Hovey was the agent of defendant Walker, who was making large investments in public lands. He had already had dealings with Benson in such transactions, and in the particular

transactions as to Monache lands followed a very ordinary
course of business in such matters, viz.: selected lieu land as
specified by his principal, Walker, indicated such selection to
Benson, and upon the production by Benson of proof of the
filing of a proper application for lieu lands in the local land-
office and the delivery of a power of attorney of the owners
appointing him, Hovey, attorney in fact to convey the land,
paid to Benson the agreed price, subsequently conveying to
Walker the selected lands.  The powers of attorney bore
certificates of acknowledgment by the owners before a notary
public, but plaintiff testified that she had never appeared be-
fore the notary or acknowledged any of the instruments.
Both the other principals, Mrs. Reddy and Edward A. Reddy,
and the notary public died prior to the trial.  The evidence
is sufficient to support the conclusion of the trial court that so
far as the naming of an attorney in fact is concerned, the
powers of attorney were blank at the time of the signing by
the owner and the placing of the same in Benson's hands, and
that Benson on making a sale would put in such blank the name
of such person as attorney in fact as was desired by the pur-
chaser.  It is not claimed that the evidence warrants the infer-
ence that Hovey had any reason to suspect that Benson was
not acting in all respects as authorized by the owners of the
land, or any notice whatever as to any infirmity in the papers
delivered to him, except that it is claimed that he knew that
Benson filled in his, Hovey's name, as the attorney in fact,
in the power of attorney, after such instruments had been
signed by the owners and placed in his possession, in other
words, that he knew that the owners had executed the powers
of attorney in blank so far as the name of the attorney in fact
was concerned.  It is unnecessary to consider what would be
the effect of such knowledge on his part, for we are of the
opinion that the evidence furnishes no foundation for any
such claim.  Fairly considered, the evidence is without conflict
upon the proposition that all his knowledge upon the question
was consistent with the conclusion that the various powers of
attorney delivered to him in the matter of the purchase of
plaintiff's lands were signed and acknowledged by the owners
after his name had been inserted as attorney in fact, and was
inconsistent with any other conclusion.  Upon giving to Ben-
son a description of the lieu land he desired to have selected,

he would also instruct him as to the name of the person to be designated in the power of attorney as attorney in fact, and when some days or weeks thereafter Benson had obtained the proof of filing the necessary application in the land-office and was ready to close the transaction, he delivered to Hovey a power of attorney complete in every respect, purporting to have been acknowledged by the owners thereof before a notary public. So far as we can understand from the record the powers of attorney delivered to Hovey indicated by the date of both instrument and certificate of acknowledgment that both signing and acknowledgment were subsequent to the time when he gave to Benson a description of the lieu land desired and instructions to have himself specified as the attorney in fact. He had no other information than that afforded by the papers delivered to him by Benson. Walker had no notice of any kind except such as is imputed to him by reason of the knowledge of his agent, Hovey. Hovey paid to Benson from $3.62 to $3.75 per acre for 1960 acres of land selected in lieu of so much of the Monache land, amounting to a little over seven thousand dollars. The price so paid by him was the price ordinarily paid by him for land of the character of that purchased, and was certainly a valuable consideration. The two hundred acre-tract involved in this action was a part of this. The tract was attempted to be conveyed by Hovey, as attorney in fact for the owners, to Walker, by deed dated December 10, 1901, and recorded in the county recorder's office of Modoc County upon December 12, 1901. It appears that nearly eleven thousand dollars has been paid by Benson to the owners on account of the Monache lands, $2750 of which was received by plaintiff from Campbell and over eight thousand dollars by the Reddys, and this was much more than the price agreed upon for the 1960 acres. So far as we can determine from the record, all moneys paid by Benson were delivered by him to Mr. Campbell. It is not shown by the record that any of the Monache land other than the 1960 acres has been finally disposed of by Benson and thus placed beyond the reach of the owners. It is not shown by the record that the United States ever approved any of the selections of land in lieu of Monache lands except the selections made for Walker. Sometime in 1903, plaintiff notified Walker that she revoked the power of attorney given to

Hovey, and in the same year commenced a contest in the United States land-office looking to a rejection of the claims of all persons claiming under papers signed by her. Having first offered to pay to Benson the sum of $2750 which she had received, upon the restoration to her of her title to all of the Monache land formerly owned by her, plaintiff commenced this action on December 10, 1904. The owners of the other undivided one half did not join in the action and were not made parties defendant.

There is no foundation in the facts above set forth for the conclusion that the papers signed by plaintiff were forgeries, and absolutely ineffectual even to serve as a basis for the application of the doctrine of estoppel. The theory of the learned judge of the trial court appears to have been that all of these papers, including the deeds of the Monache lands to the United States, were in effect forgeries and absolutely void. The idea underlying this apparently was that plaintiff was so deceived in the matter of executing these instruments as to bring her within the doctrine of certain cases which substantially hold that where a person who has no intention of selling or encumbering his property is induced by some trick or device to sign a paper having such effect, believing that paper to be a substantially different instrument, the paper so signed is just as much a forgery as it would have been had the signature been forged. These decisions are not such as to sustain plaintiff's claim in this regard. The distinguishing feature between all such cases and the case at bar is that here plaintiff fully understood and believed that she was signing papers which, when delivered, would convey all her interest in the Monache lands. She intended to execute papers having this effect. The difference between the papers she thought she was signing, according to her evidence, and the papers she actually signed, was merely one of detail and in no degree material, one set of papers having precisely the ultimate effect of the other, the conveyance of her interest in this land. Her real and only complaint upon her own testimony was her failure to personally receive full payment for her land claimed to have been occasioned by reason of the failure of her agent to place the papers in escrow, to be taken up as payments were made, and the delivery thereof to Benson without payment first having been made. This failure could not make the

papers "forgeries" in any sense of the word. She voluntarily and consciously signed papers effectually disposing of control of such land and delivered them to her attorney for the purpose of ultimate delivery to the purchasers upon payment of the purchase price. An example of the kind of case where an instrument actually signed by the defrauded party is held to be a forgery, notwithstanding the genuineness of the signature, is *Marden* v. *Dorthy*, 160 N. Y. 39, [54 N. E. 726, 46 L. R. A. 694], where the plaintiff had signed her name to a deed of her premises without any knowledge or information that it was an instrument which in any manner affected her interest therein, and without any intention to execute any instrument affecting such interest, and her signature had been obtained by some trick or device by which she was led to believe that she was signing a paper of altogether different character. Distinguishing the case from others relied on by the parties claiming against her, the court said: "The distinction between these cases and the one at bar is so broad and so plain that it is difficult to see how it could be supposed that they had any application. In all of them it will be seen that the party sought to be charged consciously and voluntarily executed a contract, obligation, or conveyance of some kind or character, and for some purpose. There was an intention to execute, and an actual execution of the instrument, in every case, followed by an actual delivery. There was the assent of the will to the use of the paper or the transfer, as the case may be, though that assent may have been induced by fraud, mistake, or misplaced confidence. In such cases when the obligation is put in circulation, or when some instrument which clothes another with the *indicia* of title to property is used by him, the equities of innocent parties must be considered." In *Cornell* v. *Maltby,* 165 N. Y. 557, 561, [59 N. E. 291], the same court holding that a transfer induced by fraud was not void but only voidable, distinguished the Marden case, saying that it was there found that the signature of Mrs. Marden had been "obtained under circumstances which precluded the assumption that she had ever intended to sign a deed, so that its use for that purpose was in fact a forgery, and this, together with the fact that the alleged acknowledgment of the paper was equally fraudulent, rendered the instrument void *ab initio.*" There is nothing in the law of this state which makes an

acknowledgment by plaintiff or a certificate of such acknowledgment essential to the validity of any of the papers actually signed by plaintiff.

Under such circumstances as are disclosed by the record in this case, the rule established by the overwhelming weight of authority is that the equities of innocent purchasers are protected, even if injury be done to the party who has been imposed upon or defrauded by her agent or original grantee. As originally said in *McNeil* v. *Tenth Natl. Bank*, 46 N. Y. 325, [7 Am. Rep. 341], and approvingly quoted in *Woodsum* v. *Cole,* 69 Cal. 142, [10 Pac. 331], and *Dover* v. *Pittsburg Oil Co.*, 143 Cal. 501, [77 Pac. 405] : "Where the true owner holds out another, or allows him to appear as the owner of or as having full power of disposition over the property, and innocent third parties are thus led into dealing with such apparent owner, they will be protected. Their rights in such cases do not depend upon the actual title or authority of the party with whom they deal directly, but are derived from the act of the real owner, which precludes him from disputing, as against them, the existence of the title or power, which through negligence, or mistaken confidence, he caused or allowed to appear to be vested in the party making the conveyance." The same general doctrine was applied in *Schultz* v. *McLean,* 93 Cal. 329, 356, [28 Pac. 1053], where the fraud occasioning injury was practiced by the plaintiffs' own agent in the matter of the delivery of a deed, the vendee being one in good faith and for value. This court there said: " 'Where one of two innocent persons must suffer by the fraud or negligence of a third, whichever of the two has accredited him ought to bear the loss.' This principle is recognized by section 3543 of the Civil Code, which reads: 'Where one of two innocent persons must suffer by the act of a third, he by whose negligence it happened, must be the sufferer,' . . . In this case, plaintiffs and defendant were both innocent. Neither knew that the fraud was being practiced; but if that fraud was productive of injury, the injury must result to the plaintiffs, for they placed it in the power of the wrongdoer to perpetrate the fraud. The vendee will not be compelled by a court of equity to lose the benefit of a bargain obtained in all fairness and honesty, because of a fraud practiced upon the vendors by their own agent. Under such circumstances they must bear the conse-

quences; for the loss is chargable to the trust reposed in their agent,—in this case a trust so complete and entire as to cause them to disregard the dictates of ordinary prudence." In view of what we deem to be shown without conflict in this case, there can be no doubt of the propriety of the application of the doctrine just referred to, so far as Hovey and Walker are concerned. Hovey, who was in effect exclusively Walker's agent, found in the possession of Benson, a well known agent for the purchase and sale of public lands, complete evidence of his full power of disposition of plaintiff's forest reserve base, and this evidence consisting of various documents signed by her for the very purpose of enabling the disposition of her land to be made, had been placed in the possession of Benson by her trusted agent. There was in Benson's possession not only the deeds of plaintiff and her co-owners conveying the Monache lands to the United States, which alone would not, of course, apparently authorize any disposition by him of lieu lands, but in addition to these deeds, the only possible object of the execution of which was to obtain lands in lieu of the reserve land, the abstract of title essential to obtain lieu land, either applications for lieu lands executed by plaintiff and her co-owners or powers of attorney authorizing Benson, as their attorney in fact, to apply for such lieu lands, the proof of filing in the land-office of the applications for the specific lieu land actually sought to be purchased by Walker, and a power of attorney apparently executed in complete form and acknowledged by plaintiff, authorizing Hovey, for a valuable consideration received from him, as her attorney, to convey the lieu land for such sum or price as he deemed proper. The evidence was without conflict upon the proposition that one of the ordinary methods of buying and selling forest reserve base was for the owner to deed to the United States the base land and obtain the approval by the government of lieu land selected by the purchaser, and give to the purchaser such a power of attorney as was given to Hovey, making the purchaser's agent or the purchaser himself the attorney in fact to make the conveyance. These documents, ready for delivery by Benson to Hovey, certainly made Benson to appear as having full power of disposition over plaintiff's property, and warranted Hovey in relying thereon to the extent of paying a valuable consideration for the land, upon the delivery of the papers,

including the executed power of attorney. There is absolutely nothing in the evidence to oppose the showing that Hovey acted in the highest good faith and without the slightest reason to suspect that Benson was not acting in the strictest accord with the arrangement between himself and the owners of the land, and we cannot see that he was at all negligent in so assuming. So acting, he paid a valuable consideration for the land. If injury resulted to plaintiff by reason of any departure by Campbell and Benson from the agreement as she understood it, it was due wholly to the trust reposed by her in her own agents. By reason of that trust, she held out Benson as having full power of disposition over her property, and she is precluded from disputing the execution of such power as against innocent third persons who were thus led into dealing with him.

In addition to this, so far as this record shows, there was no injury resulting to plaintiff by reason of any departure by her agents from the arrangement as she understood it, so far as the lands conveyed to Walker are concerned. We have already adverted to the condition of the record from which it must be assumed that the full agreed price of the lands conveyed to Walker, $3.80 per acre, was in fact paid by Benson to the agent of the owners. The money so paid to the agent was apparently all delivered to the owners, plaintiff acknowledging that she received from Campbell $2750, and it being undisputed that the remainder was delivered to the Reddys. Why the money received was not equally divided by the common agent between the two sets of owners does not appear, but manifestly the receipt of the money by plaintiff's agent was, under the circumstances of this case, receipt by her so far as Walker is concerned. Even under plaintiff's understanding of the agreement, Benson was entitled to take any portion of the land upon payment of $3.80 per acre therefor, and the complaint and evidence both indicate that she contemplated that Campbell might receive for her moneys paid for the lands as the deeds were taken out of escrow. She alleged in her complaint that she had received "of said Benson, through her attorney, J. C. Campbell, the sum of $2750," and that "she understood that said sum was in payment for lands, . . . the deeds for which had been taken out of escrow, and the said money paid into the escrow for the lands described therein." If she has been

injured at all, such injury has been wholly caused by the failure of her own agent to pay over her portion of the money received from Benson. That is a matter solely between herself and her agent. So far as the record shows, there was no injury caused plaintiff in the matter of the disposition of the lands conveyed to Walker, by reason of any failure to follow the method of disposition that she claims was agreed upon. Her injury, if any, resulted from an entirely different cause, one in no degree affecting the right of Walker to retain the land.

In view of what we have said, it is unnecessary to discuss any other point made for reversal. Considering, however, that portions of this opinion may be alleged to imply that charges of fraud made by plaintiff against Mr. Campbell are well based, it is only fair to say that the only matters as to which there is any evidence at all to support the conclusion of a departure by him from the agreement as plaintiff understood it, aside from the apparently unequal division between plaintiff and the Reddys of the money received from Benson (a matter as to which the record furnishes no solution whatever), was in approving the papers, which were submitted to her for execution and which were different from those contemplated by her, submitting such papers to her for execution, and failing to place the executed papers in escrow for delivery as the money was paid. Even upon these matters the evidence was sharply conflicting. Wherever the truth lies as to these matters, there was absolutely nothing in the record upon which to found the conclusion that there was any design on Campbell's part to defraud plaintiff, or any collusion with any other party looking to that result, or that the course pursued by him resulted in obtaining any less money for the benefit of the owners than would have been obtained had the method understood by plaintiff to have been agreed upon been followed.

The judgment and order denying a new trial are reversed.

Shaw, J., Sloss, J., Melvin, J., Henshaw, J., and Lorigan, J., concurred.

Rehearing denied.