[Civ. No. 9433.   Third Dist.   Sept. 12, 1958.]

WILLIAM GALEPPI, Respondent, v. GEORGE H. WAUGH et al., Appellants.

Anderson & Pancera for Appellants.

Pardee & Cady for Respondent.

WARNE, J. pro tem.*—This is an appeal from a judgment entered in favor of respondent against appellant George H. Waugh in the sum of $4,000 and directing defendant Lassen County Guaranty Company to pay and deliver to respondent the $4,000 held by it as commission due the appellant George H. Waugh, as realtor, for the sale of respondent's ranch.

The action is founded on fraud practiced upon respondent by Waugh in selling property in excess of his authority, and fraudulent statements in connection therewith made by Waugh to respondent which induced respondent to sign a contract for the sale of said property. Since Waugh is the only party appellant affected by this appeal, hereafter when we use the word "appellant" we are referring to Waugh, unless otherwise stated.

The facts and the evidence most favorable to respondent are: In 1956 respondent listed his 4,854-acre ranch, together with the farm machinery and equipment, for sale with the appellant, a realtor. Under the terms of the "Authorization to Sell" appellant was employed to find a purchaser, and was granted the authority to sell the ranch for $90,000 and the farm machinery and equipment for $10,000, also approximately 400 head of cattle at market price. For his services he was to receive 5 per cent commission on the sale.

Appellant was unable to find a purchaser willing to pay the listed price, but did receive from a Mr. Buckner an offer of

---

*Assigned by Chairman of Judicial Council.

$80,000 for the land, including the machinery and farm equipment. This offer was not acceptable to respondent. However, after receiving the offer, he orally authorized appellant to sell the ranch for $80,000, and the machinery for $10,000, and at the same time it was agreed that appellant should receive a 5 per cent commission on the selling price of the land only for making the sale of the ranch together with the farm machinery and equipment.

Appellant apparently informed Mr. Buckner of respondent's unwillingness to accept the offer. Mr. Buckner then countered with an offer to purchase the land ''and everything'' but the cattle for $90,000, provided the purchase price of the land was put at $85,000 and the personal property at $5,000. Without consulting respondent, appellant then wrote up a contract, in the form of a deposit receipt, by the terms of which Mr. Buckner offered to purchase the land at $85,000 and the personal property, consisting of approximately 200 tons of hay, nine horses, all farm machinery and trucks and miscellaneous equipment, at $5,000. Mr. Buckner signed the receipt and delivered to appellant his $5,000 check as a down payment.

Appellant then took the signed deposit receipt to the State Creek property in Lassen County, where respondent was busy rounding up his cattle at the time, and informed respondent that he had made the deal for him and had a purchaser who would pay $80,000 for the land and $10,000 for the machinery. Appellant then presented to respondent the reverse side of the signed deposit receipt which, so far as material, reads:

''Acceptance

''The undersigned accepts the offer on the reverse side hereof and agrees to sell the property described thereon on the terms and conditions therein set forth.

''The undersigned agrees to pay Broker therein named and employed by the undersigned to sell said property as commission the sum of Four Thousand Dollars ($4000.00). . . .

''The undersigned acknowledges receipt of a copy hereof.'' (This was followed by date and place for signature.) Appellant requested respondent to sign it.

In his complaint respondent pleaded, and at the trial testified, that when he signed the deposit receipt he did not read it and did not know that the hay and horses were included in Mr. Buckner's offer. However, after learning of the terms of the offer as set forth in the deposit receipt, respondent, pre-

sumably upon the advice of counsel, executed a deed and bill of sale conveying the real property and the personal property, including 200 tons of hay and the nine horses to Mr. Buckner in accordance with the terms of the contract.

The trial court found that appellant was the agent of respondent for the purpose of finding a purchaser for said lands and machinery and farm equipment and that it was agreed that appellant was to receive a $4,000 commission for his services; that at no time was appellant authorized by respondent to sell, find a purchaser for, or otherwise dispose of the 200 tons of hay and the nine horses, and that in procuring respondent's signature to the contract (deposit receipt) which provided for the sale of the hay and the horses appellant exceeded the authority granted him as respondent's agent. The trial court also found that appellant stated to respondent that he (appellant) had found a purchaser who would pay $80,000 for the real property and $10,000 for the machinery and that he did then and there present to respondent for his signature a certain document (the Deposit Receipt) in writing and then and there represented to respondent that said document, on the face thereof, was a contract for the sale of said property to George E. Buckner, Sr., at a price of $80,000 for the real estate and $10,000 for the machinery, and requested respondent to sign said document on the reverse side thereof and did not show or exhibit the face or obverse side thereof to respondent; that said document showed on the face thereof that said real property was sold for $85,000 and the farm machinery and equipment, plus 200 tons of hay and nine horses were sold for $5,000; that in signing said document on the reverse side thereof respondent understood and believed that he was agreeing to sell the real property for $80,000 and the machinery and equipment for $10,000 and did not know or believe that he was also thereby agreeing to sell Mr. Buckner 200 tons of hay and the nine horses.

Appellant contends, first, that he did not exceed his authority to sell the ranch by including the hay and the horses. In support of this contention he cites *Palmtag* v. *Danielson*, 30 Cal.2d 517, 521 [183 P.2d 265], and *Twogood* v. *Monnette*, 191 Cal. 103, 108 [215 P. 542], which hold that a written listing for the sale of property by an agent may be changed by a parol understanding or agreement and that if the seller accepts modified terms communicated to him by the purchaser, through the agent, the seller cannot then refuse to pay the agent his commission. Neither of the cited cases

holds that an agent may practice a fraud upon his principal to induce him to accept other terms than those set out in the written listing and then escape liabiliy in damages for his fraud. This is not an action resisting payment of an agreed commission, but to recover damages for fraud. Respondent admits that appellant earned the $4,000 agreed commission. Coincidentally, the damages awarded respondent were the same as the commission. The judgment for fraud must stand.

Nor is there any merit in appellant's second contention that the evidence does not support a finding of fraud. Since appellant had no authority to sell the hay and the horses, we feel that it was a fraud for him to include them in the contract (deposit receipt) and then procure respondent's signature to the ''acceptance'' in the manner found by the trial court. The evidence shows that he not only did not inform or show respondent that these items were included in the contract, but misrepresented the facts by stating to respondent, ''I made the deal for you for ninety thousand, I am getting eighty thousand for the land, and ten thousand for the machinery.'' Without further explanation he asked for and received, in reliance upon his statement, respondent's signature upon the reverse side of the deposit receipt without showing him the obverse side.

While it is true the findings are, in the main, based on respondent's testimony, which is in conflict with the testimony produced on behalf of appellant, they, nevertheless, are binding upon this court. (*Crawford* v. *Southern Pac. Co.*, 3 Cal.2d 427 [45 P.2d 183].) On appeal all conflicts must be resolved in favor of the prevailing party and the evidence viewed in the light most favorable to him. (*O'Banion* v. *Borba*, 32 Cal.2d 145, 147 [195 P.2d 10].)

As respondent's agent, appellant was under a duty to disclose to his principal the contents of the deposit receipt. (Civ. Code, § 2020; *Calmon* v. *Sarraille*, 142 Cal. 638 [76 P. 486]; *Rattray* v. *Scudder*, 28 Cal.2d 214 [169 P.2d 371, 164 A.L.R. 1356]; Civ. Code, § 2230; *Lawrence* v. *Tye*, 46 Cal. App.2d 514 [116 P.2d 180].) Respondent was entitled to rely upon the representations of appellant that the contract called only for the sale of the land and the machinery. (*Hoffman* v. *Patterson*, 179 Cal. 253 [176 P. 162].) As the agent of respondent, appellant stood in a fiduciary relationship and was bound to the same standards of conduct—of undivided service and loyalty—of integrity and good faith—as is a trustee (2 Cal.Jur.2d 771, § 104; Civ. Code, § 2322, subd.(3), and a vio-

lation of duty on his part is to be treated in the same manner as a violation of duty by a trustee, viz., as a fraud upon his principal. (*Darrow* v. *Robert A. Klein & Co., Inc.,* 111 Cal. App. 310 [295 P. 566].) Measured by the foregoing rules, appellant was liable to the respondent in damages for the fraud practiced upon him.

Appellant next contends that the respondent's act in completing the transaction with Mr. Buckner and accepting the benefits of the contract amounted to a ratification of appellant's act in exceeding his authority and perpetrating the fraud upon his principal and that he is, therefore, precluded from recovering damages. We do not agree with appellant. Here the appellant, so far as Mr. Buckner is concerned, was clothed with the ostensible or apparent authority to sell the hay and the horses. Therefore, Buckner, as an innocent purchaser, could have enforced the contract of sale against respondent. Nor could respondent have rescinded the contract without Buckner's consent. Under such circumstances respondent, by completing the transaction as called for by the contract, was not precluded from recovering from appellant those damages which he sustained by reason of the fraud. As stated in *Conklin* v. *Benson,* 159 Cal. 785, 793 [116 P. 34, 36 L.R.A.N.S. 537] :

"Under such circumstances . . ., the rule established by the overwhelming weight of authority is that the equities of innocent purchasers are protected, even if injury be done to the party who has been imposed upon as defrauded by her agent. . . . '. . . In this case, plaintiffs and defendant were both innocent. Neither knew that the fraud was being practiced; but if that fraud was productive of injury, the injury must result to the plaintiffs [appellant in the instant case], for they placed in it the power of the wrongdoer to perpetrate the fraud. The vendee will not be compelled by a court of equity to lose the benefit of a bargain obtained in all fairness and honesty, because of a fraud practiced upon the vendors by their own agent.' " (See also *Shirey* v. *All Night & Day Bank,* 166 Cal. 50 [134 P. 1001], and 2 Cal.Jur.2d 706.)

Applying these rules to the instant case, it follows that respondent was legally obligated to complete the transaction with Buckner, he being an innocent party.

In his closing brief appellant for the first time contends that the court's finding that appellant exceeded the authority granted him as respondent's agent is outside the issues of the case, because the complaint recites only facts of an alleged

fraud and that any award in damages that is based solely upon that finding does not authorize the judgment. This might be true if the court had limited its findings to excess of authority. However, such is not the fact. The trial court, as heretofore mentioned, specifically found that appellant had practiced fraud on respondent in other respects.

The judgment is affirmed.

Van Dyke, P. J., and Schottky, J., concurred.