[S. F. No. 3617.   Department Two.—November 4, 1908.]

## MICHAEL CASSIN et al., Respondents, v. MURDOCK NICHOLSON, Appellant.

EJECTMENT—ACTION BY LESSEE FOR BENEFIT OF LESSOR—VERIFICATION OF COMPLAINT BY LESSOR SHOWING TITLE—LESSOR BOUND.—In an action by a lessee brought for the benefit of the lessor, who verified the complaint showing her title to the premises, the lessor is bound by the action as having been brought to determine her title, and by any judgment which might be rendered therein.

ID.—RIGHT OF RECOVERY BY TENANT IN COMMON—BENEFIT OF COTENANTS—ADVERSE POSSESSION.—The lessor as a tenant in common, with other owners, had the right to recover the possession of the whole premises, if at all, and such recovery would inure to the benefit of all other tenants in common, so as to prevent the defend-

CLIV Cal.—32

ant from acquiring title against them by adverse possession pending the action.

Id.—Expiration of Lease—Substitution of Successor to Whole Title.—After the expiration of the lease, the court properly allowed the substitution of a plaintiff who had succeeded to the whole title of all the tenants in common, including that of the lessor whose title was represented in and bound by the original action.

Id.—Right of Successor to Resultant Damages.—In case of recovery in the action by the successor to the title, the resultant damages for the value of the use and occupation during the period of the unlawful detention are properly awardable to him.

Id.—Equitable Defense—Fraud of Predecessor in Title—Judgment in Separate Suit—Statute of Limitations—Effect in Ejectment.—When the defendant had originally pleaded as an equitable defense to the ejectment suit, the fraud of the predecessor in title of the lessor in imposing upon him a fraudulent deed for less property under an alleged contract for the purchase of the whole property sued for under which the purchase money therefor was alleged to have been paid, and instead of trying the equitable defense, instituted a separate suit to enforce the contract on the ground of the alleged fraud against all claimants of title in which the action was defeated under the statute of limitations, the effect in the ejectment suit is the same as if the same matter had been set by cross-complaint in ejectment, and adjudged to be barred by the statute of limitations.

Id.—Plea of Prescriptive Title under Contract of Sale—Payment in Full—Vendee Not Estopped.—The rule that a vendee cannot dispute the vendor's title applies only while the contract remains executory on his part, but when he has paid the purchase money in full, his possession under the contract is adverse to the vendor, and he may plead and prove a prescriptive title acquired against the vendor by adverse possession under the contract for the requisite period before suit commenced, and it was error to disallow such proof.

Id.—Testimony Showing Fraud in Aid of Prescription under Written Contract.—The circumstance that in aid of the prescriptive title under the written contract, the testimony shows the fraud of his vendor, which was adjudged against him as a separate equitable defense, cannot preclude his recovery under the separate plea of adverse possession under the contract as a written instrument. Such testimony was admissible to show the character and circumstances of his entry into possession under the written contract and of his continued possession thereunder after entry, and it was error to exclude it.

Id.—Proof of Contents of Lost Contract—Parol Evidence.—After proof of the loss or destruction of the written contract, the defendant was entitled to prove its contents by parol evidence.

ID.—ACTION PENDING IN OLD DISTRICT COURT—JURISDICTION OF SUPE-
RIOR COURT.—When an action of ejectment properly commenced in
the old district court was pending in a particular county when that
court was abolished,. the superior court of that county has juris-
diction to hear and determine the action, regardless of the actual
location of the land, and the substitution of an owner as plaintiff
cannot affect the jurisdiction or require the transfer of the trial of
the case to the county in which the land is situated.

APPEAL from a judgment of the Superior Court of Santa
Clara County and from an order denying a new trial. M. H.
Hyland, Judge.

The facts are stated in the opinion of the court.

Wm. H. Jordan, and Wyckoff & Gardner, for Appellant.

J. R. Welch, D. M. Delmas, and Garret W. McEnerney, for
Respondents.

HENSHAW, J.—This is an action in ejectment commenced
in the district court of the twentieth judicial district of Cali-
fornia, July 11, 1879. It appears from the complaint and the
verification thereto, made by Mrs. Winifred C. Tarpey, that
plaintiff Cassin was her lessee for a term of five years, ter-
minating upon the first day of October, 1883, and that the
action was prosecuted by the lessee on behalf of Mrs. Tarpey
and for the establishment of her title. The defendant an-
swered by denial, and for an equitable defense pleaded cer-
tain circumstances of fraud alleged to have been perpetrated
upon him by Matthew Tarpey, predecessor in interest to the
title of Winifred C. Tarpey. These matters will be found set
forth in the three appeals in the case of *Nicholson* v. *Tarpey,*
70 Cal. 608, [12 Pac. 778]; 89 Cal. 617, [26 Pac. 1101], and
124 Cal. 444, [57 Pac. 457]. In substance these allegations are
that he had entered into a written contract with Tarpey for
the conveyance of about 600 acres of land—a part of the
Tarpey ranch—at an agreed price of fifteen hundred dollars;
that he fully executed this contract by the payment of the
purchase price, and entered into possession of all the land,
and that there was delivered to him by Tarpey a deed, repre-
sented to embrace all of the land described in the agreement,
and that he believed the representation; that he was unable

to read, and that he continued so to hold possession of the land adversely to all the world in this belief. He averred that Winifred C. Tarpey and Mary Tarpey, Winifred Tarpey, and Frances Tarpey, her children, were the heirs at law and devisees of Matthew Tarpey, who had died in 1873; that he had made demand of them for a correction deed and had been refused, and asked that they be brought into court for the complete determination and settlement of the controversy. In connection with these equitable matters defendant also pleaded title by adverse possession.

Seemingly, under the mistaken idea that this equitable defense could not be successfully interposed in a legal action of ejectment (*Meeker* v. *Dalton,* 75 Cal. 154, [16 Pac. 764]; *Hyde* v. *Mangan,* 88 Cal. 319, [26 Pac. 180]), the defendant Nicholson then commenced his action against Mrs. Tarpey and her children, alleging the fraud of Matthew Tarpey, as above indicated, and praying specific performance of the agreement to convey. This is the case, the three appeals from which will be found reported as above noted. Upon the last appeal the trial court found the fraud substantially as pleaded, but found facts from which this court declared that plaintiff had not commenced his action within the three years after the discovery of the fraud, and was therefore barred from the relief he sought by the statute of limitations. Upon the rendition of this judgment Nicholson dismissed his action, and the ejectment suit here under consideration was aroused from its long slumber.

Since it would have been permissible for defendant to have offered his equitable defense and to have sought equitable relief in the original ejectment suit, this case is no different from the situation which would have resulted had the issues in *Nicholson* v. *Tarpey* been here tried. It would have been proper for the court to have disposed of the equitable matters first without a jury, and upon the final disposition of them, if their disposition were adverse to Nicholson, to proceed to the hearing of the legal controversy. The present action may therefore be regarded as one wherein Nicholson has interposed an equitable cross-complaint seeking affirmative relief upon the ground of fraud, and has been refused relief because of his neglect to commence his action within the time limited by the statute.

In 1901 this action came on for hearing. The trial court called in Winifred C. Tarpey and her children as parties plaintiff, and it being made to appear that John Tarpey had succeeded to all the right, title, and interest of Winifred C. Tarpey and her children, John Tarpey was ordered to appear as substituted plaintiff for them. He made such appearance and filed a complaint, setting forth the history of the action of *Nicholson* v. *Tarpey* and the final dismissal of it by plaintiff, and his own title, and with the usual allegations appropriate to an action of ejectment prayed judgment for the possession of the premises and the rental value during the occupancy of defendant. To this complaint Nicholson answered by denials and by pleading title in himself by adverse possession. He also set up all the matters of equitable consideration alleged in his answer to Cassin's complaint and in his own complaint in *Nicholson* v. *Tarpey.* The trial court first took evidence upon this equitable defense and found that Tarpey had committed no fraud, that there was a written agreement between the parties for the conveyance of a piece of land containing 191.14 acres, that on the twenty-ninth day of October, 1868, the full purchase price was paid by Nicholson for this land, and that Matthew Tarpey executed a deed in full conformity with the written agreement without intending or contriving or designing to mislead, deceive, overreach, swindle, or defraud defendant, and without in fact misleading, deceiving, overreaching, swindling, or defrauding the defendant; that Tarpey did convey all the property which he had ever agreed to convey or had ever represented that he would convey.

Proceeding next to the trial of the legal issues, a jury was impaneled. Plaintiff made proof of the legal title. The court, however, refused to admit most of the evidence offered by the defendant, upon the ground that he was "equitably estopped" and instructed the jury to return a verdict for the plaintiff, which it did, fixing the rental value of the property during the time of its detention at $1,778.12. Judgment followed for plaintiff, and from that judgment and from the order denying a motion for a new trial defendant appeals.

Appellants' first complaint is of the ruling of the court in admitting John Tarpey as plaintiff in the action under an order substituting him as plaintiff for Winifred Tarpey and

her children, who, it is asserted, never appeared in the action. Herein various contentions are raised, as that the original action was by the termor for possession for a limited term of years and that that term had long expired before trial; that the action was thus one contemplated by section 740 of the Code of Civil Procedure, where the right of possession in Cassin having terminated, the judgment should so declare, and, at the utmost, the award should have been merely for damages for detention. Again it is urged that the court after trial of the issues in the Cassin action, and when defendant had moved for a nonsuit, of its own motion first called in Winifred Tarpey and her children, and, upon their failure to appear, allowed John Tarpey to be substituted for them. It is asserted that, if treated as an intervener, it was error to allow him to appear, that it was error also to allow him to appear as a substitute for Winifred Tarpey and her children, who had never appeared. But, as has been pointed out, Winifred Tarpey by her affidavit had so connected herself with Cassin's claim to possession as to be bound by whatever judgment was rendered, and the action was in strictness one to determine her title. Convenient as was the common-law action of ejectment under the ancient practice for the determination of title to land, in this state where equity and law are administered in the same forum and under a single pleading, where an action to quiet title or to determine conflicting claims to real estate may be brought indifferently by one in or out of possession, the utility of such an action no longer exists, and its legal fictions, admirable as they were under common-law procedure, serve but as matters of embarrassment under our code procedure, where every action should be prosecuted in the name of the real party in interest. But it may not be said that the court erred in permitting Tarpey to appear as plaintiff. The commencement of Cassin's action interfered with the running of the statute of limitations in favor of Nicholson, and as Mrs. Tarpey would have had the undoubted right to have appeared as plaintiff with Cassin to protect her tenant's possession, or to have appeared alone to have established her own right of possession, so plaintiff John Tarpey, having succeeded, as he pleads, to the right of Mrs. Winifred Tarpey, is himself entitled to appear in person and prosecute the action. Especially is this so

where a termor's right of possession has long since expired and no judgment for possession could, therefore, be given to the nominal plaintiff (Cassin) under section 740 of the Code of Civil Procedure, no matter how completely the right to such possession during the term of his lease might have been established. And, while upon this subject, it may be added that the presumption is, since Cassin was never in possession during the term of his lease, that he did not pay, as he would not have been obliged to pay, rent to his landlord. If John Tarpey shall prevail in the action, the resultant damages for the value of the use and occupation during the period of the unlawful detention are properly awardable to him. It is perhaps unnecessary to add that John Tarpey, as plaintiff, must prevail by virtue of the title to which he succeeded from Mrs. Winifred Tarpey, and not by virtue of any other title disconnected with that which was asserted in the original action. In this connection appellants argue that Matthew Tarpey in his lifetime owned an undivided seven eighths of the rancho; that upon his death one half of that seven eighths was devised and distributed to his wife, and the other moiety to his children, and that as the lease was made by Mrs. Tarpey alone there is in litigation the title only to one half of seven eighths. But the Cassin action, with which Mrs. Tarpey connected herself, was an action for the possession of all the property, and when one of several tenants in common recovers judgment in ejectment against an adverse claimant the judgment determines the right of possession of the whole of the premises, and the recovery of possession under the judgment relates to the commencement of the action, so that, in contemplation of law, the plaintiff must be considered in possession of the whole premises as of that date. The effect of the recovery inures to the benefit of other cotenants not suing, so as to prevent the acquisition of title by adverse possession against them pending the action. (*Newman* v. *Bank of California,* 80 Cal. 368, [13 Am. St. Rep. 169, 22 Pac. 261].)

It is to be remembered that defendant Nicholson had pleaded title by adverse possession to Cassin's complaint, alleging such possession to have been continuous from the year 1867. He entered the same plea to the complaint of John Tarpey. All evidence under this plea was ruled out upon trial before the jury, upon the ground, as has been stated, that the de-

fendant was equitably estopped. Upon this the record discloses the following: Objection was made to a question asked of defendant Nicholson. The court requested the defendant's counsel to state the purpose of the testimony. He responded, "It is for the purpose of showing our ownership and title to the land in dispute and of our right to the possession of it. It is for the purpose of giving support to the plea of the statute of limitations and to our title by prescription, and also for the purposes, generally, of showing our title to the land and our right to the possession of the land.

*"Mr. Delmas:* Then, I am prepared to argue that question, if your Honor please. No evidence of that kind is admissible in this case, and the defendant is estopped from introducing it; estopped by his pleadings and by his own conduct.

*"The Court:* I think, gentlemen, that the rule of equitable estoppel will have to apply in this case. The objection will be sustained."

Counsel for appellants then, amongst other specific offers, made the following:—

"Now, I offer to prove that the defendant Murdock Nicholson from the month of June, 1867, to July 11, 1879, was in the actual, continuous, exclusive, hostile and adverse possession of the lands in dispute, holding and claiming the same against Michael Cassin, the plaintiff, and against the world. I further offer to prove that Murdock Nicholson, the defendant in this case, during this period subjected the premises and lands in dispute to his will and dominion and exercised acts of ownership over the same. I further offer to prove that during this period just named, and the whole of it, he used the premises in dispute for fuel; also for fencing and timber; also for wood; also for pasture and also for the ordinary use of the occupant; and also for the uses that lands contiguous to these lands were used, and in the usual way of land surrounding these lands."

To each and all of these offers the plaintiff objected upon the grounds above stated, and the court sustained the objection.

Wherein an equitable estoppel had arisen against the defendant so as to prevent him from proving, if he was able to do so, his prescriptive title antedating the commencement of the action, is not made plain. It is true that in the trial of

the equitable defense the court found as above indicated, but those findings and that determination could not be used to prevent the defendant from introducing all pertinent evidence upon the subject of the legal title which he claimed. Thus, in his legal defense, defendant was entitled to show before the jury under his plea that he had entered into possession under a written instrument and had continued to hold that possession under claim of right and in hostility to all the world, — to show all the facts and circumstances which were at the initiation of his possession. He was entitled to establish the written agreement between himself and Tarpey; that that agreement had been fully executed and, upon proof of its destruction, he was entitled to show by parol the contents of the agreement. The fact that in making this proof the testimony would go to the asserted fraud of Tarpey, against the existence of which fraud the court, in determining the equitable issues, had found adversely to defendant, could not deprive him of the right to present the same facts and circumstances to the jury, not as seeking at their hands any equitable relief, but as showing, if his evidence was believed, the circumstances of his entry, that it was in good faith and that it was under a written instrument. Defendant had pleaded adverse possession under section 323 of the Code of Civil Procedure. If he were not permitted to prove, as he had pleaded, that he had entered under a written instrument, he would be driven to establish an adverse holding under sections 324 and 325 of the Code of Civil Procedure, an occupancy, use, and holding very different from that required of one who claims title founded upon a written instrument. If the court's ruling, therefore, was based on the belief that the findings in the equitable defense having been adverse to defendant, he was estopped from offering proof of any of these matters in support of the legal title which he was seeking to establish before the jury, the answer already made disposes of the proposition. He was not urging an equitable defense before the jury, but he was seeking to show the nature of his adverse possession. In showing this it was pertinent and proper for him to prove how that possession was initiated and upon what it was based, and in doing so, it mattered not that the evidence tending to establish his alleged entry under a written instrument went likewise to the alleged

fraud of Tarpey. The jury was not called upon to pass upon the issue of fraud, but it was entitled, in considering the claim of adverse possession set up by defendant, to be informed of the character and circumstances of his entry, as well as of the character and circumstances of his continued possession after entry.

The only other foundation for this ruling of equitable estoppel is based upon the doctrine that a vendee is estopped from denying his vendor's title, as a tenant is estopped from denying his landlord's title. This doctrine was never applied between vendor and vendee with the strictness which, upon good reason, obtains in the case of landlord and tenant. As early as 1822 its application to the vendee was doubted by Chief Justice Marshall (*Blight's Lessee v. Rochester*, 7. Wheat. U. S. 534). He says: "The propriety of applying the doctrines between lessor and lessee to a vendor and vendee may well be doubted. The vendee acquires the title of the vendor. The rights of the vendor are intended to be extinguished by the sale, and he has no continuing interest in the maintenance of his title, unless he should be called upon in consequence of some covenant or warranty in his deed. The property having become, by the sale, the property of the vendee, he has a right to fortify that title by the purchase of any other which may protect him in the quiet enjoyment of the premises. No principle of morality restrains him from doing this; nor is either the letter or spirit of the contract violated by it. The only controversy which ought. to arise between him and the vendor respects the payment of the purchase money. How far he may be bound by this, by law, or by the obligations of good faith, is a question depending on all the circumstances of the case, and in deciding it, all these circumstances are examinable. If the vendor has actually made a conveyance, his title is extinguished, in law as well as equity, and it will not be pretended that he can maintain an ejectment. If he has sold, but has not conveyed, the contract of sale binds him to convey, unless it be conditional. If, after such contract, he brings an ejectment for the land, he violates his own contract, unless the condition be broken by the vendee; and if it be, the vendor ought to show it." Since then, the rule and doctrine which Chief Justice Marshall expressed as being the true one has received universal recognition. It

still is true that a vendee in possession under an executory contract of sale, is estopped from denying the vendor's title, for the same reasons that would apply in the case of a tenant. But whenever, so far as the vendee is concerned, the contract is executed, from the time of its execution the vendee may assert his adverse possession and title against the world, including his vendor. "It is a rule of law now uncontroverted, that where the vendee under a contract or agreement to purchase land has executed or performed the agreement on his part, by full payment of the purchase money, his possession from that time becomes adverse to that of the vendor, having gone into possession primarily under the agreement." (*Ambrose* v. *Huntington,* 34 Or. 484, [56 Pac. 513] ; 2 Woods on Limitations, 260.) And so it is said by this court in *Fleishman* v. *Wood,* 135 Cal. 256, [67 Pac. 276], speaking of the defendant in possession: "He was the owner and in possession, and if he had remained in possession for five years from and after the completion of his contract, he would have acquired the legal title by adverse possession." If the case of *Farish* v. *Coon,* 40 Cal. 33, shall be deemed to announce a contrary doctrine, it must be considered overruled by the later and better authority.

For the reasons above given, and under section 396 of the Code of Civil Procedure, John Tarpey being a proper party plaintiff, his appearance did not so change the action as to necessitate a transfer of the trial of it to the county in which the land was situated. The action having been properly commenced in the district court, was properly heard and determined in the superior court of Santa Clara County. (*Watt* v. *Wright,* 66 Cal. 202, 4 West Coast Rep. 622, [5 Pac. 91].)

No other matters call for special attention.

For the foregoing reason the judgment and order are reversed and the cause remanded.

Lorigan, J., and Beatty, C. J., concurred.

Hearing in Bank denied.