# Mizamore v. Berglin.

### Bill to Enforce Trust.

(Decided June 8, 1916.  72 South. 347.)

1. **Vendor and Purchaser; Right as Between Parties; Perfection of Title by Purchaser; Estoppel.**—Where a purchaser of land under an option contract, while holding possession under the contract, secured two quit claim deeds, each for a third of the land, the grantors therein being led to believe that in making the deeds they were aiding the purchaser in perfecting his title, and were in effect ratifying previous deeds made by them, but which did not appear in the record chain of title, such purchaser was estopped from setting up the title thus acquired in opposition to the title of his vendor.

2. **Trusts; Constructive; Nature.**—Where a vendee in possession under a contract, obtains deeds merely to clear title and ratify previous deeds, a constructive trust arises therefrom imposed by equity, and growing out of the violation of duty, but not resting on contract.

3. **Vendor and Purchaser; Perfecting Title; Reimbursement.**—Where the purchaser expends nothing in acquiring his quit claim deed, the equitable principle that he is entitled to reimbursement for what he has paid to perfect his title, is without application.

APPEAL from Mobile Chancery Court.

Heard before Hon. THOMAS H. SMITH.

Bill by John Berglin against Harry L. Mizamore to enforce a vendor's lien, and for other purposes. Decree for complaint and respondent appeals. Affirmed.

The bill in this case was filed by the appellee against the appellant and shows the following facts:

The complainant is the owner of 320 acres of land described in the bill, and has owned the same for many years. The said land was formerly owned by one E. R. Schowalter, who died in 1889, leaving as his sole heirs three children, Volnay McR. Schowalter, Percy R. Schowalter, and Blanche S. Broadwood. In 1894, the estate was divided among these heirs, the land described in the bill falling to Percy R. Schowalter, being deeded to him by the other two heirs ( all the parties being of age). But said deed was not recorded and is unaccounted for, it being alleged that the same was either lost or mislaid. The title of complainant is shown to have been derived as follows: Mortgage deed from said Percy R. Schowalter to Aaron Moog, dated August 20, 1896, and duly recorded; deed of foreclosure from Aaron Moog, mortgagee, to one Silas Matson, and by mesne conveyance from said Matson to complainant.

The bill further alleges that during the month of May, 1914, the respondent entered into negotiations with the complainant for the purchase of said land, and, with the consent of the complainant, entered into possession thereof; and that, while enjoying such possession, respondent, in March, 1915, discovered that there was a defect in the record title of the complainant, in that the records did not show a conveyance of the interest of the heirs to Percy R. Schowalter. Thereupon, it is alleged, the said respondent caused to be prepared deeds, to be executed by said Volnay M. Schowalter and Blanche S. Broadwood, conveying to himself all right, title, and interest in said land which, according to the record, amount to an undivided two-thirds interest. It is further alleged that, in procuring said deeds, the respondent represented to the parties that he desired to obtain the same merely to perfect the title acquired by complainant and in order to ratify the mortgage theretofore executed by said Percy R. Schowalter, and to remove any question or doubt as to the validity of the title. The deeds were accordingly executed, no consideration therefor having been paid by the respondent, the grantors being

[Mizamore v. Berglin.]

desirous of ratifying their previous deed of partition to their brother, since deceased. It is then alleged that the respondent had these deeds recorded and is now setting up title to an undivided two-thirds interest in said land, adverse to the title of complainant, and is attempting to sell portions of the land and to incumber it by mortgage. The prayer of the bill is that respondent be declared by the court to hold whatever title he may have acquired under the deeds above noted, as trustee for the complainant, and not in his own right, and that he be restrained from asserting any title to said land by virtue of said deed.

The answer admits the option contract and the acquiring of the deeds as set forth in the bill, and that respondent now asserts title to, and claims ownership of an undivided two-thirds interest in the land. The answer denies that complainant was the owner of the land, and alleges that he in fact owned only a one-third interest therein. It admits the source of title as set up in the bill, and alleges that respondent went into the possession of the land at his own expense and peril; and that, after he had secured from complainant the option to buy, he discovered that complainant owned only a one-third interest, whereupon he secured the deeds referred to in the bill, but the answer denies that such deeds were secured upon any false representation.

Upon submission of the cause for final decree on the pleadings and the proof the chancellor awarded the relief sought by complainant, declaring the respondent to hold the title in trust for complainant and restraining him from asserting title to the land acquired by the said deeds in opposition to the complainant. From this degree, the respondent prosecutes this appeal.

RICKARBY & AUSTILL, for appellant. LESLIE HALL, and W. C. BEEBE, for appellee.

GARDNER, J.— (1) The relationship of vendor and vendee has, so far as the question here involved is concerned, been likened unto that of landlord and tenant. As said by this court in *Potts v. Coleman*, 67 Ala. 225: "The vendee, though not strictly a tenant of the vendor, and though the technical relation of landlord and tenant is not created, is estopped from denying the title of the vendor, upon principle and reasoning like that which estops the tenant from disputing the title of the landlord; and the estoppel applies to whoever may acquire possession from the

vendee.—*Jackson v. Harder,* 4 Johns. (N. Y.) ·202 [4 Am. Dec. 262] ; *Jackson v. Dubois,* 4 Johns. (N. Y.) 220 ; *Jackson v. Walk-· er,* 7 Cow. (N. Y.) 643 ; *Jackson v. Spear,* 7 Wend. (N. Y.) 403 ; *Russell v. Irwin,* 38 Ala. 44."

The following quotation finds frequent reference in our cases : " 'Whenever one person is placed in such relation to another, by the act or consent of that other, or the act of a third person, or of the law, that he becomes interested for him, or interested with him, in any subject of property or business, he is prohibited from acquiring rights in that subject, antagonistic to the person with whose interests he has become associated.—*Davis v. Hamlin,* 108 Ill. 40 [48 Am. Rep. 541].''—*Scottish U. & N. I. Co. v. Dangaix,* 103 Ala. 394, 15 South. 956 ; *Kent v. Dean,* 128 Ala. 600, 30 South. 543.

The evidence in this case clearly shows that the respondent to the bill secured from the complainant a contract in writing, designated "an option contract," for the purchase of the land described in the bill ; and that, by virtue of such contractual relation, he was by complainant placed in possession of the land, and has ever since remained in the possession thereof. It further appears as clearly etsablished that, while holding such possession under said option contract, respondent secured the two deeds referred to in the bill, and he now sets up the title thus acquired in hostility to that of complainant, his vendor.

We think it sufficiently established by the evidence that the grantors were led to believe that in making these deeds they were in fact aiding the complainant in perfecting his title, and were in effect ratifying their previous transfer of title to their brother, since deceased. The facts that the respondent, after securing the option contract, was placed in possession of the land by the consent of complainant, and that he held the possession under said "option," are not only clearly shown by the testimony for complainant, but are admitted by respondent, who testified as follows : "I went into possession of the land under the option from John Berglin, and that is the way I claimed the land up to the time I got these quitclaim deeds.'

When the respondent had the land "abstracted" he discovered the defect in the record title, as the deeds to said Percy R. Schowalter had not been recorded ; but there is nothing to show that there existed any actual defect in the title of complainant. Under the facts here established, the respondent is estopped from set-

[Mizamore v. Berglin.]

ting up his title acquired in opposition to that of his vendor, and he will be held to hold the title thus acquired as in trust for complainant. The general rule is stated in the text in 39 Cyc. 1617, as follows: "Since a purchaser in possession under his vendor is estopped to dispute the latter's title, it follows that under adverse circumstances he cannot acquire and assert, as against his vendor, any adverse title to the property. This rule applies both at law and in equity, and ordinarily without regard to whether the vendor at the time of the contract had title to the property. The rule does not mean that the purchaser is absolutely precluded from acquiring an adverse title or that by so doing he will forfeit his rights under the original contract; but, if he does acquire such a title, it will inure to the benefit of the vendor, and he will only be entitled to reimbursement for his outlay."

There are qualifications and exceptions to the general rule. See 39 Cyc. 1618. This general rule is well established in this state: "The vendee cannot dispute the title of the vendor, nor set up an outstanding title to defeat his recovery."—*Seabury v. Stewart*, 22 Ala. 207, 58 Am. Dec. 254.

Also applicable here is the following from *Munford v. Pearce*, 80 Ala. 459: "The appellant was clearly estopped from setting up adversely to the appellee, who was his vendor, the title which he acquired at the administrator's sale. * * * He was in possession of the lands under the purchase from appellant; and the irresistible inference from the entire testimony and all the facts of the case is that this purchase was made, by agreement of parties, merely for the purpose of perfecting the title. The land was worth about $2,000, and the amount paid by Munford for the title obtained at the administrators sale was only the nominal sum of $22. It does not appear that he ever thought of referring his possession to this title, until the institution of this present suit. He is precluded, under this state of facts, from disputing the title of his vendor from whom his possession was acquired.—*Bliss v. Smith*, 1 Ala. 273; *Helvenstein v. Higgason*, 35 Ala. 259."

(2) A vendee thus acquiring a title in hostility to his vendor, while retaining possession obtained under his purchase contract, is held to be a trustee for his vendor under the theory of constructive trusts. Such a trust does not arise by virtue of any contract or agreement between the parties, but is imposed by equity and grows out of the violation of a duty which the

purchaser owes to his vendor. Speaking to the question of constructive trusts, Mr. Pomeroy, in his work on Equity Jurisprudence (volume 3, § 1044) says: "Constructive trusts include all those instances in which a trust is raised by the doctrine of equity for the purpose of working out justice in the most efficient manner, where there is no intention of the parties to create such a relation, and, in most cases, contrary to the intention of the one holding the legal title, and where there is no express or implied, written or verbal, declaration of the trust. They arise when the property thus obtained is held in hostility to his beneficial rights of ownership. As the trusts of this class are imposed by equity, contrary to the trustee's intention and will, upon property in his hands, they are often termed trusts in invitum; and this phrase furnishes a criterion generally accurate and sufficient for determining what trusts are truly 'constructive.' An exhaustive analysis would show, I think, that all instances of constructive trusts properly so called may be referred to what equity denominates fraud, either actual or constructive, as an essential element, and as their final source."

The following apt quotations are found in the case of *Petroski v. Minzgohr*, 144 Mich. 356, 108 N. W. 77, 115 Am. St. Rep. 451:

"The vendor and vendee (of lands) stand in the relation of landlord and tenant; the vendee cannot disavow the vendor's title."—*Galloway v. Finley*, 12 Pet. 264, 9 L. Ed. 1079.

"After doing homage to his vendor's title by purchase and entry under it, the vendee will not be tolerated to repudiate his allegiance to it, and transfer it to another title acquired whilst thus in possession. If such after-acquired title should be paramount, the vendee shall be esteemed as holding it in trust for his vendor, as having provided it to support and maintain his possession and his right under his original vendor. Whilst a court of equity holds the vendee to entire good faith to his vendor, and will not allow him to get in an outstanding title or incumbrance, and set it up in opposition to his vendor, yet it will lend its aid to reimburse all reasonable advances expended to fortify the title. At the same time it will rebuke every attempt by the purchaser to betray or invalidate the title."—*Kirkpatrick v. Miller*, 50 Miss. 521.

"A vendee under articles may set up an outstanding title not in himself, but, when he buys such title, he is trustee of his vendor, and is entitled only to what he paid to perfect the title."—*Stephens v. Black*, 77 Pa. 138.

[Guin, et al. v. Grasselli Chemical Co.]

See, also, *Frink v. Thomas*, 20 Or. 265, 25 Pac. 717, 12 L. R. A. 239; *Deming v. Lee*, 174 Ala. 410, 56 South. 921.

(3) As the evidence clearly shows that respondent expended nothing in acquiring the quitclaim deed, the equitable principle of reimbursement is without application. The trust sought to be established in this case is one created by operation of law, and not a trust created or declared by the parties. The authorities relied upon by counsel for appellant are therefore not in point.

The decree of the chancellor is affirmed.

ANDERSON, C. J., and MCCLELLAN and SAYRE, JJ., concur.