[No. 18512.   Department One.   October 2, 1924.]

## J. S. SLOCUM et al., Respondents, v. FRED H. PETERSON et al., Appellants.[1]

TAXATION (140) — FORECLOSURE SALE — NOTICE TO OWNER — STATUTES. A tax deed and sale, under a general county tax foreclosure, is void where it conclusively appears that the county treasurer did not give notice to the owner in compliance with the letter or spirit of Rem. Comp. Stat., § 11298.

VENDOR AND PURCHASER (103) — TRUSTS (20-1) — BREACH OF AGENCY CONTRACT — ACQUIRING ADVERSE TITLE — RIGHTS AND LIABILITIES OF PARTIES. One holding lands under a void tax title, who entered into a contract of sale to the agent of an undisclosed principal, and also employed the agent to procure quitclaim deeds from the tax title defendants to further assure his title, cannot claim that such prospective purchaser holds in trust for him the title obtained by the agent from the tax title defendants, in a suit in which no rights were based upon the contract of sale, which was never consummated but was rescinded, without notice that the agent had procured title from the tax title defendants and transferred the same to the prospective purchaser.

Appeal from a judgment of the superior court for King county, Griffiths, J., entered September 20, 1923, upon findings in favor of the plaintiffs, in an action to quiet title, tried to the court.  Reversed.

Ralph H. Foster and Fred H. Peterson, for appellants.

Karr & Gregory and H. G. Sutton, for respondents.

PARKER, J.—The plaintiffs, Slocum and wife, commenced this action in the superior court for King county, seeking a decree quieting title in themselves to lots 11 to 20, inclusive, in block 1 of Powell's North University Addition to the city of Seattle, as against the claim of title therein made by the defendants, Peterson and wife.  The Klatawa Investment Com-

[1]Reported in 229 Pac. 20.

pany is also a party defendant to the action, but that company is merely the grantee in a conveyance taken by it in trust for Peterson and wife of a portion of the lots. We shall for convenience of expression discuss the case as though Slocum and Peterson were the only parties to the action. Since the platting of the addition, portions of lots 14 to 17, inclusive, have by condemnation been acquired by the city of Seattle for the street running diagonally across them, known as Bothell Way, which condemned portions of those lots are concededly not here involved.

Slocum's claim is rested upon the theory that he has acquired a general tax title to the lots, evidenced by a tax deed issued to him by the county treasurer of King county, and that, on August 31, 1922, Peterson acquired in trust for him, under a quitclaim deed, all of the lots from the record owners thereof, paying them therefor $250, which sum he offers to pay to Peterson with interest from that date.

Peterson's claim is rested upon the theory that Slocum's tax deed is void as a conveyance, and that he (Peterson) holds absolute title to the lots, wholly free from any trust obligation in favor of Slocum, under the quitclaim deed executed by the record owners of the lots on August 31, 1922; conceding, however, that Slocum is entitled to be reimbursed in the full amount he paid in the acquiring of the tax deed and for subsequent taxes he may have paid upon the lots, including interest from the dates of such payments, and offering to pay Slocum such amount as the court may determine is so justly due to Slocum, as a condition precedent to him (Peterson) being decreed to be the absolute owner of the lots freed from all claim of title thereto made by Slocum. Peterson prays for a decree accordingly.

Following a trial upon the merits, the superior court rendered its decree quieting title in the lots in Slocum as against the claim of Peterson; conditioned, however, that he pay to Peterson $250, with interest at the legal rate thereon from August 31, 1922, the date of Peterson's payment of that sum for the quitclaim deed from the record owners, under which he holds title to the lots. From this disposition of the cause, Peterson has appealed to this court.

The controlling facts may be summarized as follows: On December 27, 1920, there was issued by the treasurer of King county a tax deed in pursuance of a general tax foreclosure judgment rendered by the superior court for King county and a sale had thereunder purporting to convey to Slocum the lots 11 to 20, inclusive, for delinquent general taxes of prior years. The record owners of the lots at that time, conceded to have good title thereto, may be here referred to as the Powells. Slocum went into possession after the issuance of the tax deed to him, made some slight improvement of them by grading, rented portions of them, and has at all times since then been in physical possession of them. About July 1, 1922, W. W. Reagan, acting for Peterson, commenced negotiations with Slocum looking to the purchase of some of the lots. We think it plain from the evidence that Reagan's then agency for Peterson was not of such character that he had any authority whatever to enter into a contract of purchase of the lots binding upon Peterson, but only had authority to enter into negotiations looking to that end. However, Reagan's negotiations with Slocum culminated in their entering into a contract, the terms of which, so far as material to our present inquiry, read as follows:

"Seattle, Wash., July 3rd, 1922.

"Received from W. W. Reagan one hundred dollars, on account of the purchase price of the following described real estate in King County, Washington, to-wit:

"All of those portions of Lots 14-15-16-17 and all of Lot 18, Block 1, Powell's University Addition to Seattle, King Co. Total purchase price is twenty-five hundred dollars ($2,500) plus assessments. Balance to be paid as follows: $900 cash and balance $250 each and every ninety days from receipt of deed until paid in full. Property is to be delivered free and clear of all encumbrances except back and present taxes and municipal assessments.

"Title is to be shown by abstract or title insurance furnished by seller, and 10 days allowed for examination.

"If the title is not good, and cannot be made good within 30 days from receipt of written notice of any defects, this agreement is void, and the earnest money shall be refunded. But if the title is good, and the purchaser fails to carry out this contract, the earnest money may at seller's option be forfeited as liquidated damages.

"The property is to be conveyed by warranty deed, free from encumbrances, except as above stated.

"Time is of the essence of this agreement.

"Purchaser agrees to buy said property on above terms.

"John S. Slocum
"W. W. Reagan,      "Maude H. Slocum
     "Purchaser.          "Seller."

While Slocum then evidently thought he was contracting with Reagan as principal, Reagan was intending to act for Peterson, and the contract was thereafter approved and ratified by Peterson as his contract. This we think the evidence plainly shows is the only contract, agreement or understanding of any nature which in any manner ever became binding upon Peterson touching the purchase of the lots therein de-

scribed or the consideration to be paid Slocum therefor. There is testimony tending to show that, in the negotiations between Reagan and Slocum prior to the date of the making of the sale contract of July 3, 1922, Slocum asked $3,000 for the lots 14 to 18, but finally orally agreed with Reagan that if he (Reagan) would endeavor to procure a quitclaim deed for all of the lots 11 to 20 from the Powells, he (Slocum) would take $2,500 for these lots 14 to 18. Thereafter on July 20, 1922, evidently in an effort to evidence this claimed prior oral understanding, Reagan signed and delivered to Slocum a paper as follows:

"This is to certify that I, the undersigned, am attempting to secure and hope to secure a deed from George W. Powell and the Minnie B. Powell Estate to the following described property:

"Lots 11 to 20 inclusive, except that portion condemned by the city of Seattle for street purposes more particularly known as Bothell Way, Powells North University Addition to the city of Seattle, for the purpose of clearing up the title of J. S. Slocum in and to said property, from whom I have agreed to buy all of lot 18 and portions of lots 14-15-16-17 lying south of Bothell Way, and it is understood that as soon as said deed is procured I am to convey to J. S. Slocum without further consideration the following portion thereof:

"Portions of lots 11-12-13-14 lying north of Bothell Way and all of lots 19-20 Blk. 1, Powells North University Addition to the city of Seattle, and I am also to convey to him the remainder of said property unless the terms of purchase and sale as set forth in a certain earnest money receipt describing a portion of said property, are carried to their conclusion between us.

"Dated at Seattle, Washington, this July 20, 1922.
                                    "W. W. Reagan."

Peterson did not have knowledge of this understanding between Reagan and Slocum or of the signing of this paper by Reagan until in April, 1923, after the commencement of this action, and never ratified any such agreement or understanding as a part of his (Peterson's) contract for the purchase of the lots, nor did he ever authorize him (Reagan) to make such an agreement in his behalf. Reagan, however, did put forth some efforts to procure a quitclaim deed from the Powells, evidently for the purpose of perfecting the title so that Peterson would acquire a good title upon the consummation of the purchase in pursuance of the contract of July 3, 1922. Reagan, however, was unsuccessful and finally abandoned his efforts in that behalf, when, by mutual agreement between him and Slocum, the sale contract was rescinded and the $100 earnest money which had been paid by Reagan to Slocum upon the contract was returned by him to Reagan about September 7, 1922. This, of course, also rescinded the paper signed by Reagan July 20, 1922, claimed to be a part of that contract. Neither Reagan nor Peterson ever went into possession of the lots or in the least exercised any dominion or control over any portion of them under the sale contract of July 3, 1922.

On August 31, 1922, the Powells executed and delivered to Peterson a quitclaim deed for all of the lots 11 to 20, inclusive, for which Peterson paid them $250, no part of which was ever paid or advanced by Slocum. We do not fail to note that this was prior to the mutual rescission of the contract by Slocum and Reagan; the latter, we assume, acting for Peterson. It may also be conceded for present purposes that Slocum did not, upon agreeing to such rescission, then know that Peterson had received the deed from the Powells. In

that deed, when delivered to Peterson, the space therein for the naming of the grantee was left blank, Peterson being authorized by the Powells to fill in any name he might choose as grantee. Thereafter Peterson filled in the names of Reagan and wife as grantees, and thereafter Reagan executed and delivered deeds of conveyance for the lots 11 to 20 to Peterson and his holding company, the Klatawa Investment Company.

Thereafter on March 6, 1923, this action was commenced, prosecuted, tried and disposed of upon the theory in substance as above noticed. Slocum has at all times since the rescission of the sale contract, and especially in the prosecution of this action, asserted his claim of absolute title to all the lots in question. At the very conclusion of the trial, after the court had orally announced its decision in substance as it was finally decreed, counsel for Peterson inquired of the court: "Is the defendant [Peterson] still entitled to this contract, your Honor? I would like to have your Honor rule on that point;" counsel for Slocum immediately replying: "That is hardly in this case. We brought a suit to quiet title." The court did not rule upon this question, evidently acquiescing in the suggestion of counsel for Slocum that the question was not in the case, since the case is manifestly one to quiet title and not one to enforce the sale contract.

Is Slocum entitled to a decree quieting his title to the lots as against the claim of Peterson, upon the theory that he acquired good title by his tax deed? We think it is conclusively shown that the requirement of § 11298, Rem. Comp. Stat. [P. C. § 6998], relating to sales of lands for delinquent taxes, "that before such sale shall be held, the county treasurer shall notify the record owner of such real estate of the pending sale    .    .    .    ," was not given in

compliance with the letter or spirit of that section. Want of such notice renders the sale and the tax deed void, or at least voidable, at the suit of the record owners or their grantee, Peterson in this case. This has become the settled law of this state by our decisions in *Okanogan Power & Irrigation Co. v. Quackenbush*, 107 Wash. 651, 182 Pac. 618, 5 A. L. R. 966; *Walter v. Hoeffler*, 117 Wash. 120, 200 Pac. 1101; *Riley v. Varian*, 123 Wash. 436, 212 Pac. 545.

While counsel for Slocum protest against the rule of these decisions, it is not seriously contended but that they are controlling in our present inquiry unless overruled. This we are not disposed to do. We conclude that in no event is Slocum entitled to a decree quieting his title upon the theory of having acquired good title by his tax deed. This, however, does not mean that he is not entitled to be reimbursed for the amount he has paid in acquiring his tax deed, and in satisfaction of taxes upon the land since then, with interest, and that he may not look to the land for such reimbursement. This question, however, seems of no moment in view of Peterson's offer, except as further inquiry may be necessary to determine the amount for which Slocum is entitled to be so reimbursed. The trial judge seems to have entertained this view of the law touching the tax deed and Slocum's rights thereunder, but manifestly rested his disposition of the case wholly upon the theory that Peterson holds the title acquired by him from the Powells under the quitclaim deed, in trust for Slocum.

Is Slocum entitled to a decree quieting his title to the lots as against the claim of Peterson, upon the theory that Peterson holds the legal title to the lots in trust for Slocum under the deed executed by the Powells on August 31, 1922, and the subsequent deeds

vesting the legal title to the lots in Peterson and his holding company? We think not. If Slocum were here seeking performance of the sale contract of July 3, 1922, entered into between him and Reagan for Peterson, instead of pressing his claim upon the theory that all of Peterson's rights under that contract are at an end because of its rescission, there would be quite a different, and possibly a sound, basis upon which to rest his claim that the title acquired by Peterson from the Powells should inure to his (Slocum's) benefit in the perfecting of his title, to the end that Peterson might thereby acquire a good title upon the consummation of the purchase contract. But we have seen that that contract was voluntarily rescinded by Slocum and Reagan acting for Peterson, and that Slocum's claims made since then as against Peterson are manifestly rested upon the theory that that contract is no longer of any force or validity. The sale contract being rescinded, Slocum is exactly in the position he was before its making. He still has all of the rights which the tax deed and the payment of taxes thereunder ever gave him and he never surrendered possession of the lots under the sale contract. He has parted with nothing. Peterson's purchase of the lots from the Powells might possibly have inured to the benefit of Slocum for the purpose of the consummation of the purchase contract, but that is not what Slocum seeks. It is quite beyond us to comprehend how or by what right Slocum could ever rightfully claim any equitable interest in the lots upon the trust theory as against Peterson, other than as he possibly might have done so in aid of the consummation of the purchase contract of July 3, 1922. Making no claim and manifestly having no desire to consummate that contract, we think he has no legal, equitable

or moral claim as against Peterson's title acquired through the deed from the Powells; though, of course, his claim as against the land for sums paid by him for the tax deed and subsequent taxes remains.

Counsel for Slocum invoke and quote the law as stated by the learned editors of 27 R. C. L., p. 547, as follows:

"If a purchaser who has been let into possession by his vendor buys in a paramount outstanding title he cannot set it up against the vendor unless he first makes a bona fide surrender of the possession. It is also held, as a general rule, that the vendor has the right to demand that a paramount title so purchased shall inure to his benefit on his paying the amount expended by the purchaser in making the purchase; and this is held true where one enters into possession under a contract giving him the option to purchase. This is said to result from the relation which it has been found expedient to establish between vendor and purchaser, to preserve the confidence which in matters of contract ought to exist between man and man, and prevent the obtaining of undue advantage from information acquired by means of such a contract, and is an application of the general rule that wherever one person is placed in such relation to another, by the act or consent of that other, or the act of a third person, or of the law, that he becomes interested for him, or interested with him, in any subject of property or business, he is prohibited from acquiring rights in that subject antagonistic to the person with whose interests he has become associated."

A critical examination of this quotation and the authorities upon which it is rested will show, we think conclusively, that this view of the law has no application except where the purchaser has gone into possession of the land under the sale contract. A purchaser so in possession cannot assert a title acquired by him, adverse to his vendor, while he remains in

possession under the sale contract, because his remaining in possession under the sale contract is wholly at variance with the rescission of or the non-existence of such contract, and the purchaser will, while in such possession, no more be permitted to so challenge or impair the title of his vendor with a view of defeating the vendor's title than a tenant in possession will be permitted to challenge or impair the title of his landlord. The industry of counsel has not brought to our attention a single decision of any court of this country, and we think there is none, wherein it has been held that an adverse title acquired by a contract purchaser of real estate was held by him in trust for his vendor; except where he, the purchaser, had gone into and was holding possession under the terms of the sale contract; or possibly where, the sale contract remaining in full force and effect, by agreement the vendee, though not in possession, was to acquire some adverse title, and had acquired such title, in aid of the vendor's title as part of the consideration for the conveyance to be made by the vendor. We note the following among many authorities supporting and illustrating this view of the law: *Finch v. Noble,* 49 Wash. 578, 96 Pac. 3, 126 Am. St. 880; *Petroski v. Minzgohr,* 144 Mich. 356, 108 N. W. 77; *Frink v. Thomas,* 12 L. R. A. 239; *Mizamore v. Berglin,* 197 Ala. 111, 72 South. 347, L. R. A. 1916F 1024; *Stephens v. Black,* 77 Pa. St. 138; *Jackson v. Spear,* 7 Wend. (N. Y.) 401; *Pepper v. Dunlap,* 5 La. Ann. 200; *Flint v. Conner,* 53 Cal. App. 279, 200 Pac. 37; see, also, 39 Cyc. 1614, and note.

We have seen that neither Peterson nor Reagan, his agent, ever went into possession of the lots or any portion thereof under the sale contract; that the sale contract has been rescinded and is now treated by Slocum as conferring no rights upon Peterson; and

that Slocum paid no part of the purchase price for the deed from the Powells under which Peterson claims. It is not impossible that Slocum might, with some show of reason, have insisted that his voluntary rescission of the sale contract should be set aside, because when he rescinded it he did not know that Peterson had then acquired this outstanding adverse title from the Powells. But Slocum has never at any time sought to avoid his rescission of the contract for that reason. Indeed, manifestly he does not desire to have that contract now treated other than as having been rescinded. In other words, he desires to have the benefit of the title acquired by Peterson from the Powells, and at the same time not give Peterson the right to consummate the purchase under the sale contract. This is an action wherein Slocum seeks the quieting of his title to these lots absolutely as against the claims of Peterson. It is not an action wherein he seeks the invoking of the title acquired by Peterson' from the Powells in aid of the consummation of the sale contract.

We conclude that the deed executed by the Powells on August 31, 1922, and the subsequent deeds, resulted in Peterson acquiring and now holding the absolute fee simple title to all the lots in question, subject, however, to Slocum's right to be reimbursed for the amounts he paid in acquiring his tax deed and in satisfaction of subsequent taxes upon the lots, with interest from the dates of such payments.

The decree of the superior court is reversed, and the cause remanded to that court with instructions to determine the amount due Slocum for the sums paid out by him in acquiring his tax deed and in satisfaction of subsequent taxes upon the lots, with interest, and enter its decree awarding to and confirming in Peterson

and the Klatawa Investment Company absolute title in fee simple to all of the lots 11 to 20, as against the claim of title made by Slocum; conditioned, however, that Peterson and the Klatawa Investment Company pay to Slocum the amounts which may be found justly due to Slocum for sums paid by him in acquiring his tax deed and in satisfaction of subsequent taxes.

MAIN, C. J., HOLCOMB, and TOLMAN, JJ., concur.

MACKINTOSH, J., concurs in the result.