[Sac. No. 5413.   In Bank.   Feb. 5, 1942.]

E. F. BUTLER et al., Appellants, v. WALTER M. WOOD-
BURN, Respondent.

Harding J. McGuire, Orr M. Chenoweth and Chenoweth & Leininger for Appellants.

W. E. Davies and J. E. Ebert for Respondent.

GIBSON, C. J.—The plaintiffs brought this action in the Superior Court of Yuba County to have it adjudged that the defendant, Walter M. Woodburn, holds title to an undivided one-eighth interest in certain real property as a trustee for the plaintiff, E. F. Butler. The complaint also prayed that defendant Woodburn be compelled to execute and deliver a deed conveying title in the one-eighth interest to plaintiff Butler upon the repayment to defendant of the amount expended by him in acquiring the property. The trial court rendered a judgment which denied the relief sought and quieted defendant's title to the one-eighth interest in the property. Plaintiffs bring this appeal from the judgment for defendant.

The plaintiff Butler was the owner of a seven-eighths interest in two parcels of real property in Yuba County which consisted of the "Lost Channel Mine" and 160 acres of additional land. The remaining one-eighth interest in the property was owned by one Frank Butler, a half-brother of plaintiff Butler. In 1931, plaintiff Butler entered into an agreement with the plaintiff Maynard in which Maynard was given an exclusive option to purchase the property for a period of five years, which was extended until 1946 by a later agreement. Under this agreement Maynard was entitled to possession of the property for the purpose of engaging in mining operations thereon. On July 10, 1934, Maynard and his wife, as parties of the first part, agreed to sell the "Lost Channel Mine" together with certain water rights to the defendant Woodburn and to Maynard, as parties of the second part. Maynard and his wife represented that they were the owners of the property and agreed to place a good and sufficient deed in escrow for the duration of the agreement. Woodburn and Maynard, as parties of the second part, agreed to purchase the land for the sum of $60,000, all but $500 of

which was to be paid in specified percentages of the gross proceeds derived from mining operations. For the purpose of completing the contract of purchase, the defendant was permitted to go into possession of the property in order to commence mining operations. A separate operating agreement was entered into at the same time between Woodburn and Maynard relating to the operation of the mine. This agreement was modified by later agreements entered into on January 15, 1935, and March 5, 1936.

Pursuant to the contract of purchase a deed purporting to convey title to the property was placed in escrow on January 21, 1935. On or about June 26, 1936, after the defendant Woodburn had expended over $20,000 on the ''Lost Channel Mine,'' he discovered for the first time that Frank Butler was the owner of record of an undivided one-eighth interest in the property. The trial court found that during this entire period plaintiffs knew that the plaintiff Butler was the owner of seven-eighths in the property and that Frank Butler was the owner of the other one-eighth interest. It was also found that at the time the contract of purchase was entered into, the plaintiff Maynard falsely represented to defendant that he was the owner of all the properties described. In support of these false statements he exhibited to defendant a deed executed by plaintiff Butler and purporting to convey all of the property from Butler to Maynard. The court found that after Woodburn discovered the false representations made by Maynard and after he learned the condition of the title, he sought to protect his investment in the property by purchasing the undivided one-eighth interest in the property which was owned by Frank Butler. This purchase from Frank Butler was made on August 11, 1936, and the court found that it was made by defendant in good faith to protect his interests and only after he had expended a large sum of money on the property and had been lulled by Maynard, acting with the approval of the plaintiff Butler, into thinking that the title to the entire property was vested in Maynard. The trial court resolved all conflicts in favor of defendant, ordered that the plaintiffs take nothing by reason of their complaint, and gave judgment quieting defendant's title to the undivided one-eighth interest which he purchased from Frank Butler.

The contentions advanced upon this appeal by the plaintiffs are the arguments which the trial court rejected. Plain-

tiffs rely on the established rule that any outstanding title acquired by a purchaser in possession of real property under an executory contract of purchase inures to the benefit of the contract vendor for the purposes of the agreement and that all the contract purchaser can ask is to be reimbursed for his expenditures in acquiring the outstanding interest. In arguing that this doctrine should be applied in favor of the plaintiff Butler in the present case, plaintiffs cite only the general statement of the rule which is found in *Garvey* v. *Lashells,* 151 Cal. 526, 533 [91 Pac. 498]. (Also, 25 Cal. Jur. 689.) The main portion of the brief upon appeal, therefore, is devoted to the contention, which is contrary to the conclusion of the trial court, that the plaintiff Butler was not connected with the fraud practiced by Maynard in such a way that he is barred by unclean hands from coming into a court of equity to seek relief. Under the facts of the present case, however, it is unnecessary for us to consider this contention because, assuming that the plaintiff Butler was not barred by his conduct from coming into a court of equity, it is clear that the general doctrine cited furnishes no basis for the recovery sought in the present case.

▆ The general rule relied upon is one of universal application where the purchaser of land under an executory contract has entered into possession of the land according to the terms of the agreement. During the life of such a contract, a purchaser in possession of the land is estopped to deny the validity of his vendor's title for the purpose of defeating the agreement. (25 Cal. Jur. 688; 27 R. C. L. 543 *et seq.;* 34 A. L. R. 1321, 1324; Ann. Cas. 1912C, 404.) The purchaser, for example, cannot remain in possession of the land under the contract and successfully resist either the vendor's action for the purchase price or an action to recover possession of the land upon the ground that the vendor's title is defective. (*Coates* v. *Cleaves,* 92 Cal. 427 [28 Pac. 580]; *Garvey* v. *Lashells, supra; Gervaise* v. *Brookins,* 156 Cal. 103 [103 Pac. 329]; *Keele* v. *Clouser,* 92 Cal. App. 526 [268 Pac. 682]; *Burnett* v. *Caldwell,* 9 Wall. (U. S.) 290, 293 [19 L. Ed. 712]; Ann. Cas. 1912C, 404-406.) The reason which supports the rule was stated in *Garvey* v. *Lashells, supra,* page 531: "A purchaser cannot retain possession of property delivered to him under a contract of sale without complying with the terms of the contract as to payment for the reason that the title of his vendor is not satisfactory. If a perfect title was

to be conveyed, and the vendor is unable to give such a title, the vendee has appropriate remedies, but he cannot keep both the property and the purchase money.''

A specific application of this general doctrine is found where the purchaser in possession of land under an executory contract, after discovering that the title of his vendor is defective because of an outstanding claim in the hands of a third party, attempts to deny the vendor's title following an acquisition of the outstanding interest. Under such circumstances the courts have refused to permit the outstanding title thus acquired by the contract purchaser to be used for the purpose of defeating his obligations under the contract, so long as the possession originally obtained in accordance with the contract continues. (*Garvey* v. *Lashells, supra,* p. 533; *Galloway* v. *Finley,* 12 Pet. (U. S.) 264, 295 [9 L. Ed. 1079]; *Mizamore* v. *Berglin,* 197 Ala. 111 [72 So. 347]; *Latin-American Bank* v. *Rogers,* 87 Fla. 147 [99 So. 546]; *Frink* v. *Thomas,* 20 Or. 265 [25 Pac. 717, 12 L. R. A. 239]; *First Nat. Bank* v. *Mapson,* 181 Wash. 196 [42 Pac. (2d) 782]; 40 A. L. R. 1078, *et seq.;* 25 Cal. Jur. 689; 27 R. C. L. 547; 1 Warvelle, Vendors (2d ed.), p. 232, sec. 186; Maupin, Marketable Title (3d ed.) p. 549, *et seq.*)

The court in *Slocum* v. *Peterson,* 131 Wash. 61, 70 [229 Pac. 20, 40 A. L. R. 1071], accurately summarized this application of the doctrine: ''A critical examination . . . will show, we think, conclusively, that *this view of the law has no application, except where the purchaser has gone into possession of the land under the sale contract.* A purchaser so in possession cannot assert a title acquired by him, adverse to his vendor, while he remains in possession under the sale contract, because his remaining in possession under the sale contract is wholly at variance with the rescission of or the nonexistence of such contract, and the purchaser will, while in such possession, no more be permitted to so challenge or impair the title of his vendor with a view to defeating the vendor's title than a tenant in possession will be permitted to challenge or impair the title of his landlord.'' (Italics ours.) The whole purpose behind the rule is the protection of the contract obligation existing between the vendor and vendee, as is further illustrated by the fact that once the contract is executed the rule no longer applies. (*Cassin* v. *Nicholson,* 154 Cal. 497, 507 [98 Pac. 190]; *San Francisco* v. *Lawton,* 18 Cal. 465, 476 [79 Am. Dec. 187].)

This doctrine of equitable estoppel cannot be applied against the defendant under the facts of the present case in favor of plaintiff Butler. No contractual obligation for the purchase of the property exists, or ever has existed, between the plaintiff Butler and the defendant. Obviously, therefore, the defendant did not go into possession of the land under the provisions of any contract with plaintiff Butler and his continued possession of the land is not dependent upon the performance of any contractual obligations due from defendant to plaintiff Butler. Defendant, therefore, cannot use the outstanding title acquired by him for the purpose of defeating any contract obligations between himself and Butler. That being so, the whole basis for the application of the doctrine which is set forth in the cases cited is absent in this case. Indeed, rather than compelling the defendant to recognize the title of plaintiff Butler, the doctrine relied upon would not, in fact, permit defendant to do so. The contract under which defendant actually acquired possession of the land names the plaintiff Maynard and his wife as vendors. Under his contract, therefore, defendant was required to recognize the title of Maynard, according to the doctrine discussed above. In view of the deed from Butler to Maynard which defendant had seen in Maynard's possession Butler might have been merely a third party making a claim adverse to that of his vendor. This is particularly so since possession of a deed by the grantee is *prima facie* evidence that the deed was properly delivered to him. (*Stewart* v. *Silva*, 192 Cal. 405, 409 [221 Pac. 191]; *Ward* v. *Dougherty*, 75 Cal. 240, 242 [17 Pac. 193, 7 Am. St. Rep. 151].)

In addition to the considerations already mentioned, the inequitable nature of the relief sought by the plaintiff Butler is demonstrated further by the following fundamental principle of equity. Civil Code, section 3543 provides: "Where one of two innocent persons must suffer by the act of a third, he, by whose negligence it happened, must be the sufferer." Where, as here, the true owner permits another to appear as the owner of the property or as having full power of disposition over it, it is established that an innocent third party who is thus led into dealing with the apparent owner will be protected by a court of equity against the claims of the true owner whose conduct made the fraud possible. (*Conklin* v. *Benson*, 159 Cal. 785, 793 [116 Pac. 34, 36 L. R. A. (N.S.) 537]; *Jeannerette* v. *Taylor*, 2 Cal. App. (2d) 568 [38

Pac. (2d) 831] ; cf. *Trout* v. *Taylor*, 220 Cal. 652 [32 Pac. (2d) 968] ; 10 Cal. Jur. 506, *et seq.*) In the present case not only did Butler permit Maynard to remain in possession of a deed apparently conveying title to the latter, but for a considerable time, so far as appears, he made no objection to the continued possession of the property by defendant under his contract with Maynard.

The judgment is affirmed.

Curtis, J., Edmonds, J., Houser, J., and Traynor, J., concurred.

CARTER, J., Dissenting. Briefly stated, there is presented in this case the following situation: plaintiff Butler granted an option to plaintiff Maynard to purchase certain mining property, in which the latter was given the right of possession. Plaintiff Maynard then agreed to sell the property to defendant, and in a transaction with which plaintiff Butler has no connection, falsely represents that he (Maynard) was the owner of the property; defendant is given the right to possession and does go into possession under the agreement with Maynard. Thereafter, and before defendant has paid the purchase price of the property, the condition precedent to his right to a conveyance thereof from Maynard, he discovers that plaintiff Butler, not Maynard, is the true owner of the property and that Frank Butler owns an outstanding one-eighth interest therein. In spite of that knowledge he makes no attempt to rescind the contract or give up possession of the property. On the contrary, he maintains that his contract with Maynard is still in full force and effect, and that he is entitled to remain in possession of the property and extract the minerals therefrom. He continues to hold under plaintiff Butler's title because obviously he has no other basis for a claim to any right or interest in the property. Under these circumstances, that is, knowing that plaintiff Butler is the owner of the property, and that any right he asserts therein must be by virtue of and pursuant to Butler's title, he acquires the outstanding one-eighth interest owned by Frank Butler. These facts certainly justify the application of the rule that defendant is estopped to deny plaintiff Butler's title and that any outstanding interest he acquires while holding possession under that title inures to the benefit of plaintiff Butler. (*Garvey* v. *Lashells*, 151 Cal.

526 [91 Pac. 498].) The reason for that rule is that a vendee of real property shall not be permitted to have the benefits arising from the possession of the real property which are enjoyed by reason of the rights acquired under another's title, and at the same time refuse to pay the purchase price and take a position adverse to the holder of the title by acquiring an outstanding interest in the property adverse to him. The vendee is not entitled to a clear title to the property until he has paid the full purchase price thereof and in the interim may not object to a defect in the vendor's title. The situation is not altered by the fact that his contract of purchase was with Maynard rather than Butler. He continued to enjoy and insist on his right to possession after he knew Butler, not Maynard, was the owner of the property. That enjoyment or advantage was therefore necessarily predicated upon Butler's title; it could not be derived from any other source. His conduct constituted a recognition in effect of Butler as the true owner and vendor of the property. The situation is no different in reality than if Maynard had assigned his option from plaintiff Butler to defendant, rather than having made a separate contract with him.

The majority opinion states that the equities are in favor of the defendant; that when one of two innocent persons must suffer, (Butler and defendant) by reason of another's conduct, the one who put the third person in a position to cause the injury must bear the burden. But here, as far as appears, defendant has not been and will not be injured nor will he suffer in any manner. It does not appear that any royalties have been paid, thus defendant has paid nothing on the purchase price except the original down payment. In return for that he has had possession of the property for several years. It may be true that he and his associates have expended a considerable sum in mining activities on the property, but whether those expenditures improved or made the property more valuable is not shown. He is in no worse or different position than he would have been if Maynard rather than Butler held title to the property. He still has his rights under his contract with Maynard and may proceed to cause those rights to mature into the right to receive a conveyance of the property. If he can prove that he has suffered any damages by reason of Maynard's false representation as to ownership, he may recover the same from May-

nard or have the amount of such damage credited against the purchase price payable to Maynard. He is not injured by being estopped to question Butler's title, inasmuch as he is entitled to receive from Butler as a condition upon which Butler's recovery of the one-eighth interest is predicated, the $100 he paid for that one-eighth plus interest thereon.

In my opinion, the majority opinion is based upon a very tenuous and highly technical ground, and overlooks the basic equitable principle involved in the case. To my mind, it is obvious that plaintiff Butler is the only one who can be injured in this case. As he has not been guilty of any fraud or come into court with unclean hands, he should be entitled to invoke the rule contended for by him, and the judgment should be reversed.

Appellants' petition for a rehearing was denied March 6, 1942. Carter, J., voted for a rehearing.